DESERET PHARMACEUTICAL COMPANY, INC., Plaintiff and Appellant,

v.

STATE TAX COMMISSION of the State of Utah, Defendant and Respondent.

No. 14872.

Supreme Court of Utah.

May 2, 1978.

Van Cott, Bagley, Cornwall & McCarthy, Richard H. Stahle, Salt Lake City, for plaintiff and appellant.

Vernon B. Romney, Atty. Gen., G. Blaine Davis, Asst. Atty. Gen., for defendant and respondent.

MAUGHAN, Justice:

Deseret Pharmaceutical Company, Inc. (hereafter Deseret), petitions for a review of a decision of the State Tax Commission (hereafter Commission) refusing a refund of corporate franchise taxes for 1971 and 1972 and denying a request for redetermination of a deficiency assessed in the amount of $78,833 plus interest for 1973. The decision of the Commission is affirmed. All statutory references are to U.C.A.1953, unless otherwise noted.

On appeal Deseret contends the Commission erred in invoking the relief provisions under Section 59–13–95 of the Uniform Division of Income for Tax Purposes Act (U.D.I.T.P.A., Sections 59–13–78 through 97), by finding the allocation and apportionment provisions of the act did not fairly represent the extent of plaintiff's business activity in this state. The Commission, to effect an equitable allocation and apportionment of Deseret's income [59–13–95(d)], taxed all of Deseret's income, except that portion attributable to the States of Texas and Washington. Deseret claims its tax liability should be determined in accordance with the formula provided in Section 59–13–86.

Deseret, a Utah corporation, has its home office and principal place of business in Sandy, Utah, where it manufactures disposable hospital and surgical supplies. These products are marketed throughout the United States and a number of foreign countries. It employs salesmen, who reside in various states, to solicit orders, usually with dealers, who are independent of it.

Deseret maintains no sales office, has no inventories outside of Utah, and orders are accepted at its office in Utah. Its sole activity outside of Utah is the solicitation of business, by salesmen, employed by it. The salesmen encourage hospitals to purchase Deseret's products through independent dealers. Sometimes, salesmen call upon certain government related hospitals to whom Deseret sells directly. On occasion, the salesmen will audit a dealer's inventory and recommend the purchase of plaintiff's products based upon the salesmen's estimate of customer demand. The salesmen do not solicit orders from the independent dealers who place their orders directly with plaintiff at its home office.

Credit is approved at the home office, and salesmen have no voice in credit approval. Salesmen are not authorized to accept the return of defective merchandise. Such returns must be approved by the home office.

Deseret leases cars from a leasing company for its salesmen, operating in the various states, and reimburses them for the cost of their travel. No reimbursement is made for any use made of their homes, except for business telephone calls. The home telephones of the salesmen are not listed under Deseret's name.

Sales, during the time period in dispute, were principally made to independent dealers, who dealt in merchandise of other manufacturers competing with plaintiff. Approximately 95 percent of sales made on a national basis were made to these independent dealers. The merchandise was purchased directly from Deseret, and was delivered to the dealers by Utah-based trucks and common carriers. Dealers were not permitted to hold merchandise on consignment; thus inventories held by dealers were the property of the dealers. The dealers did not hold themselves out as agents of Deseret, each dealt under its own business name. Deseret's salesmen had no authority over the dealer's conduct of its business.

The explicit manner in which the out of state business was conducted, complied with the requisites of Public Law 86–272 (Title 15, Sec. 381 U.S.C.A.). This statute prohibits a State from imposing a net income tax on income derived within a State by any person from interstate commerce, if the only business activity within the State is the solicitation of orders for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and if approved, are filled by shipment or delivery from a point outside the State.

59–13–79, as enacted in 1967, provides:

Any taxpayer having income from business activity which is taxable both within and without this state, shall allocate and apportion his net income as provided in this act.

Under this provision it would appear plaintiff had no income from business activity, which was taxable without this state, within the purview of the prohibition of the federal statute, Pub. Law 86–272. However, the federal statutory prohibition extends solely to a net income tax on income. In contrast, Section 59–13–80, provides:

For purposes of allocation and apportionment of income under this act, a taxpayer is taxable in another state if (1) in that state he is subject to a net income tax, a franchise tax measured by net income, *a franchise tax for the privilege of doing business, or a corporate stock*

*tax*, or (2) that state has jurisdiction to subject the taxpayer to a net income tax regardless of whether, in fact, the state does or does not. [Emphasis supplied].

The State of Washington had demanded a franchise tax from Deseret, for the privilege of doing business. This tax was a set percentage of the gross proceeds of sales within Washington. The State of Texas had demanded corporate stock tax. Neither of these taxes was determined by net income. Liability for these taxes to Texas and Washington was determined, by the Commission, to bring Deseret within the scope of the U.D.I.T.P.A., as provided in Sections 59–13–79 and 80; and therefore subject to allocation and apportionment of income.

Deseret claimed it was entitled to use the apportionment formula set forth in Section 59–13–86, in determining its tax liability to this state. The Commission invoked the relief provisions of Section 59–13–95, which provides:

If the allocation and apportionment provisions of this act do not fairly represent the extent of the *taxpayer's business activity in this state*, the taxpayer may petition for or the state tax commission may require, in respect to all or any part of the taxpayer's business activity, if reasonable:

(a) separate accounting;

(b) the exclusion of any one or more of the factors;

(c) the inclusion of one or more additional factors which will fairly represent the taxpayer's activity in this state; or

(d) *the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.* [Emphasis supplied].

Defendant found that plaintiff, by employing the apportionment formula, was able to assign outside the state 43.1 percent of its income for 1971, 44.3 percent of its income for 1972, and 42.48 percent of its income for 1973. The taxes paid to Texas were $921.00 for 1971; $1,483.25 in 1972;

and $3,170.50 in 1973. The taxes owed to Washington were: $696.00 in 1971; $839.00 in 1972; and $1,034.00 in 1973. By using the apportionment formula, Deseret was able to avoid paying taxes to Utah for the three year period in the sum of $162,650.93.

The Commission ruled plaintiff's application of the apportionment formula in Section 59–13–86 tended greatly to diminish its corporate franchise liability to Utah, with no compensating liabilities to other states. Thus, the application of the formula, did not fairly represent the extent of Deseret's business activity in Utah. The Commission also found that purpose of the allocation procedures, of the U.D.I.T.P.A., was to provide a uniform method of assigning income among the various states, in which a business was taxable, to ensure that a taxpayer was not taxed on more than 100 percent of his total income. The formula of the uniform act was not devised as a method by which the taxpayer could avoid taxation.

It was also ruled, because of the limited nature of plaintiff's business activities in states outside Utah, Deseret enjoyed immunity from taxation on its income in all states, under the provisions of Public Law 86–272 (15 U.S.C., Section 381). The Commission determined that an equitable adjustment in Deseret's allocation and apportionment procedures should be made pursuant to Section 59–13–95, in order to represent more fairly the extent of plaintiff's business activity in this state. It also determined it was equitable and reasonable to apply an adjustment that allocated and apportioned, outside this state only, those sales, payroll expenses, and properties attributable to the states of Texas and Washington.

On appeal, Deseret contends there was no evidentiary basis for defendant to rule the apportionment formula, of 59–13–86, did not fairly represent the extent of plaintiff's business activity in Utah. It is further urged that the method proposed for allocating and apportioning the income was unreasonable.

The question is, did the Commission properly invoke the relief provisions of Section 59–13–95, because the statutory formula did not "fairly represent the extent of the taxpayer's business activity in this state?" The Commission's decision was predicated on Pub. L. 86–272, 73 Stat. 555, 15 U.S.C., Section 381. This statute was explained in *Heublein v. South Carolina Tax Commission*.[1]

In the statute, Congress attempted to allay the apprehension of businessmen that "mere solicitation" would subject them to state taxation. Such apprehension arose because, as businessmen who sought relief from Congress viewed the situation, Northwestern States Portland Cement did not adequately specify what local activities were enough to create a "sufficient nexus" for the exercise of the State's power to tax. Section 381 was designed to define clearly a lower limit for the exercise of that power. Clarity that would remove uncertainty was Congress' primary goal. By establishing such a limit, Congress did, of course, implicitly determine that the State's interest in taxing business activities below that limit was weaker than the national interest in promoting an open economy. . . .

■ Under this federal statute, the solicitation of orders in other states did not constitute a local activity creating a sufficient nexus for the exercise of the power to tax net income in other states. The corollary to this statute is, if Deseret's income cannot be taxed in states where Deseret merely solicits orders, the income is attributable to plaintiff's business activity in this state.[2]

■ Thus, the amount of a corporation's business activity within Utah will be determined in inverse proportion to the amount of that corporation's business activity in other states. If a corporation conducts sufficient business activities in other states to render it taxable in those states, the

---

1. 409 U.S. 275, 280, 93 S.Ct. 483, 487, 34 L.Ed.2d 472 (1972).

2. *Coors Porcelain Company v. State*, 183 Colo. 325, 517 P.2d 838 (1973).

amount of its business activity in Utah will necessarily be less in comparison to a corporation whose business activity in other states is not of a sufficient amount to render it taxable in some or all of those states.[3]

The evidence before the Commission indicated, in detail, plaintiff's method of operation in other states; and was sufficient to sustain the ruling the statutory formula did not represent the extent of the taxpayer's business activity in this state. The method of allocation and apportionment employed was reasonable and equitable.

Deseret emphasizes the legislative preference for the statutory formula, which is shown by the mandatory nature of the language in Sec. 59–13–86. It also urges the relief provisions of Sec. 59–13–95 should be given a narrow construction, and the one who seeks to invoke the applicability of the relief provisions has the burden of proof. We agree.

Apportionment under the U.D.I.T.P.A. is the prescribed method. The use of any method other than apportionment should be exceptional, and the party who seeks to invoke the applicability of the relief provisions has the burden of proof.[4]

Keesling & Warren, in an article entitled, "California's Uniform Division of Income for Tax Purposes Act (Part I)" 15 U.C.L.A. L.Rev. 156 (1967), described the reasons for the inclusion of the relief provisions in the Uniform Act. They state at pp. 170–171:

> It must be recognized, of course, that the Uniform Act does contain an express grant of discretion to the administrator to select allocation methods other than those prescribed. In the allocation of income, unusual situations, which should be excepted from the application of general rules, frequently arise. Such situations may be impossible to anticipate or difficult to describe with sufficient precision to permit drafting of a provision in the statute setting forth precisely the rules to be applied. Accordingly, it is common in allocation statutes to include a general relief provision authorizing the administrator to depart from the general rule if necessary to obtain fair or equitable results. . . .

The question arises whether the relief provisions should be interpreted broadly to permit the Board to use separate accounting, or other methods extensively, or whether they should be interpreted narrowly so as to permit the Board to deviate from the rules only in rare and unusual situations.

There are compelling reasons for giving the relief provisions a narrow construction. Under a broad construction the purposes of obtaining uniformity through the adoption of the Uniform Act would be defeated. If a choice of methods is permitted, different administrators in different states inevitably will choose different methods. As a result, even if all the states imposing taxes on or measured by income should adopt the Uniform Act, the chaotic condition heretofore existing would continue to exist.

Professor Pierce, the draftman of the Uniform Act, clearly was of the opinion that the relief provisions should be interpreted narrowly and were designed to permit the use of methods different than those prescribed in the Act only in unusual cases and in cases where the application of the specifically prescribed methods might be held unconstitutional. Shortly after the act was drafted he published an article discussing these provisions. He states that "[t]he Uniform Act, if adopted in every state having a net income tax or a tax measured by net income, would assure that 100 percent of income, and no more and no less, would be taxed." Obviously this statement would not be true if the relief provisions were interpreted to give the administrators in the different states broad discretion in the selection of alternative methods.

---

3. *Scott & Williams, Inc. v. Board of Taxation,* N.H., 372 A.2d 1305, 1310 (1977).

4. *Donald M. Drake Company v. Department of Revenue,* 263 Or. 26, 500 P.2d 1041 (1972).

Professor Pierce further indicates that the instances in which the prescribed methods may produce an unreasonable or unconstitutional result are apt to be rare. He warns also that:

"departures from the basic formula should be avoided except where reasonableness requires. Nonetheless, some alternative method must be available to handle the constitutional problem as well as the unusual cases, because no statutory pattern could ever resolve satisfactorily the problems for the multitude of taxpayers with individual business characteristics."

We hold that the party seeking to invoke the relief provisions of the act must prove that under the apportionment provisions of the act an unreasonable result will occur, such as, the taxes imposed are grossly disproportionate to the taxpayer's business activity in this state, or extraterritorial income is being taxed. We believe such an interpretation will effectuate the general purpose of the act to make the law of the enacting states uniform, Section 59–13–96, and to assure that 100 percent of income, no more or no less, will be taxed.

The facts of the instant case clearly establish an unusual situation. Deseret was exempt, under federal law, from imposition of a net income tax, or a tax measured by net income, in those states where it solicited business. Under such circumstances, the income from such solicitation is attributable to plaintiff's business activity in this state. The apportionment provisions of the act did not fairly represent Deseret's local business activity.

The Commission employed a proper method to reach an equitable allocation and apportionment of plaintiff's income. Its method was in accord with the purpose of the Uniform Act.

ELLETT, C. J., and CROCKETT, WILKINS and HALL, JJ., concur.