**AMERICAN TELEPHONE AND TELEGRAPH COMPANY, AT & T Technologies, Inc., AT & T Information Systems, Inc., AT & T Communications, Inc., AT & T Resource Management Corporation, AT & T Teletype Corporation, AT & T Communications of the South Central States, Inc., AT & T South, Inc., AT & T Credit Corporation and AT & T Intelliserve, Inc., Plaintiffs/Appellants,**

v.

**Joe B. HUDDLESTON, Commissioner of Revenue, State of Tennessee, Defendant/Appellee.**

Court of Appeals of Tennessee, Middle Section at Nashville.

March 18, 1994.

Permission to appeal Denied by Supreme Court June 27, 1994.

Val Sanford, Jack Robinson, Jr., Gullett, Sanford, Robinson and Martin, Nashville, for appellants.

Charles W. Burson, Atty. Gen. and Reporter, Joe C. Peel, Asst. Atty. Gen., Tax Div., Nashville, for appellee.

## *OPINION*

LEWIS, Judge.

Plaintiffs brought this action against the Commissioner of Revenue of the State of Tennessee alleging that pursuant to Tennessee Code Annotated § 67–1–1803 they were entitled to a refund of excise taxes for the years 1984, 1985, and 1986, which were not due from plaintiffs and were wrongfully paid. Plaintiffs base this action on the allegation that they are components of a single, unitary, business enterprise.

This case is decided by the proper construction of the Tennessee Excise Tax Statutes and in particular, Tennessee Code Annotated § 67–4–811.[1] Tennessee Code Anno-

---

1. Tennessee Code Annotated § 67–4–811 is as follows:

(a) All business earnings shall be apportioned to this state by multiplying the earnings by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three (3); provided, however, that businesses which come under the provisions of §§ 67–4–814 and 67–4–816 shall apportion their earnings as set out in those sections.

(b)(1) The property factor is a fraction, the numerator of which is the average value of the taxpayer's real and tangible personal property owned or rented and used in this state during the tax period and the denominator of which is the average value of all the taxpayer's real and tangible personal property owned or rented and used during the tax period.

(2) For purposes of this section, "property" includes a corporate partner's share of any specific partnership property. The value of such

tated § 67–4–811 provides for the standard formula for the apportionment of business earnings, and Tennessee Code Annotated § 67–4–812(a) provides for the adoption of other methods of apportionment where the standard provisions do not fairly represent the extent of the taxpayer's business activities in Tennessee.

It is the plaintiffs' contention that the standard provisions for apportionment in Tennessee Code Annotated § 67–4–811 are based on the unitary business principle and that the plaintiff taxpayers are components of a unitary business enterprise. They further argue the accounting method of combined reporting is the appropriate method to follow in apportioning their earnings as components of a multi-state, multi-corporate, unitary enterprise, as a matter of law.

The defendant contends that the apportionment for the plaintiffs must be based on separate entity accounting, treating each taxpayer as an independent autonomous entity.

The plaintiffs further argue that under Tennessee Code Annotated § 67–4–812(a) apportionment by combined reporting is necessary to fairly represent the extent of their business activities in Tennessee and to effectuate an equitable apportionment of their earnings.

An audit in December 1988 by the Department of Revenue for the tax years 1983, 1984, and 1985 for five of the plaintiffs: American Telephone and Telegraph Company, AT & T Communications of the South Central States, AT & T Information Systems, Inc., AT & T Resource Management Corporation, AT & T South, Inc., and AT & T Technologies, Inc., resulted in an assessment against AT & T for additional excise taxes of $65,454.57.

The parties stipulated certain facts including how AT & T and its affiliates operated. The Commissioner also stipulated that AT & T and its affiliates operated on a unitary

partnership property shall be determined from the books of the partnership in the manner set out herein and in the rules promulgated by the commissioner for the valuation of property owned or rented by the taxpayer.

(c) Property owned by the taxpayer is valued at its original cost. Property rented by the taxpayer is valued at eight (8) times the net annual rental rate. Net annual rental rate is the annual rental rate paid by the taxpayer less any annual rental rate received by the taxpayer from subrentals.

(d) The average value of property shall be determined by averaging the values at the beginning and ending of the tax period, but the commissioner may require the averaging of monthly values during the tax period if reasonably required to reflect properly the average value of the taxpayer's property.

(e)(1) The payroll factor is a fraction, the numerator of which is the total amount paid in this state during the tax period by the taxpayer for compensation, and the denominator of which is the total compensation paid everywhere during the tax period.

(f) Compensation is paid in this state if:

(1) The individual's service is performed entirely within the state;

(2) The individual's service is performed both within and without the state, but the service performed without the state is incidental to the individual's service within the state; or

(3) Some of the service is performed in the state; and

(A) The base of operations or, if there is no base of operations, the place from which the service is directed or controlled is in the state; or

(B) The base of operations or the place from which the service is directed or controlled is not in any state in which some part of the service is performed, but the individual's residence is in this state.

(g)(1) The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period.

(2) For purposes of this section, "total sales" includes a corporate partner's share of any sales made by the partnership.

(h) Sales of tangible personal property are in this state if:

(1) The property is delivered or shipped to a purchaser, other than the United States government, within this state regardless of the f.o.b. point or other conditions of the sale; or

(2) The property is shipped from an office, store, warehouse, factory, or other place of storage in this state and the purchaser is the United States government.

(i) Sales, other than sales of tangible personal property, are in the state if:

(1) The earnings-producing activity is performed in this state; or

(2) The earnings-producing activity is performed both in and outside this state and a greater proportion of the earnings-producing activity is performed in this state than in any other state, based on costs of performance. [Acts 1976, ch. 537, §§ 39–47; T.C.A., §§ 67–2714—67–2722; Acts 1986, ch. 859, § 2; 1989, ch. 379, § 3.]

basis. The stipulations established that AT & T owns directly or indirectly numerous affiliates. AT & T and its affiliates have common directors and officers. AT & T exercises control over its affiliates through a management system in which AT & T sets policy and direction for the various lines of business handled by the affiliates.

The excise tax law in effect in Tennessee at all times pertinent required each plaintiff to pay an excise tax equal to 6% of its net earnings as defined in Tennessee Code Annotated § 67–4–805. Corporations doing business both within and without Tennessee are permitted to allocate an apportionment of taxable income under the provisions of Tennessee Code Annotated §§ 67–4–809 through 67–4–816.

The apportionment provisions were adopted by the Tennessee legislature in 1976 based upon the Uniform Division of Income for Tax Purposes Act (UDITPA). The plaintiffs here were engaged in business both within and without the State of Tennessee. Tennessee Code Annotated § 67–4–809 therefore required the plaintiffs to apportion their business earnings in accordance with the apportionment formula found in Tennessee Code Annotated § 67–4–811. This section defines a standard apportionment formula to be used by each taxpayer subject to taxation under the excise tax law, except taxpayers covered under sections not pertinent here.

The excise tax statute requires each taxpayer to apportion its earnings according to the standard formula which utilizes the property, payroll, and sales values of that taxpayer alone. Nothing in Tennessee Code Annotated § 67–4–811 authorizes any form of combined apportionment. Tennessee Code Annotated § 67–4–812(c) authorizes the Commissioner to require combined reporting or make specific allocations of income and deductions in circumstances in which there is a shifting of income among corporate affiliates, which results in a distortion of income or evasion of taxes.

The plaintiffs filed a Petition for Variance with the Commissioner of Revenue with respect to their 1984 excise tax returns in which they sought relief from the standard apportionment formula in Tennessee Code Annotated § 67–4–811 and requested permission to file on a combined basis under the provisions of Tennessee Code Annotated § 67–4–812(c). Plaintiffs filed refund claims for the years 1984, 1985, and 1986 based on the denial of the 1984 Petition for Variance and asserted that they were entitled to apportion on a combined basis under Tennessee Code Annotated § 67–4–812(c).

The Commissioner denied the Petition for Variance by letter dated 17 January 1986 and required each of the plaintiffs to file their 1984 returns in accordance with the standard apportionment formula in Tennessee Code Annotated § 67–4–811. The Commissioner denied the petition because there was no evidence of evasion of taxes or shifting of income among the affiliated group of corporations as required for combined reporting, pursuant to Tennessee Code Annotated § 67–4–812(c).

The Commissioner contends that each plaintiff is required to apportion its net earnings, as defined by Tennessee Code Annotated § 67–4–805, in accordance with the standard statutory apportionment formula set forth in Tennessee Code Annotated § 67–4–811.

■ Plaintiffs have submitted for our consideration three issues with numerous subissues. The defendant has countered with five issues. While we will discuss each of the arguments raised by the parties, we restate the issue as follows: Did the trial court correctly hold that the plaintiffs' excise tax return must be filed on a separate entity basis rather than a combined or consolidated basis?

A company doing business in Tennessee is required to compute its earnings in accordance with the specific definitions contained in Tennessee Code Annotated § 67–4–805.[2]

---

**2.** Those portions of Tennessee Code Annotated § 67–4–805 which are pertinent to our inquiry are as follows:

(a)(1) Except as provided in subdivision (a)(2), "net earnings" is defined as federal taxable income before the operating loss deduction and special deductions provided for in 26

If a corporation is doing business both within and without Tennessee and qualifies for allocation and apportionment under Tennessee Code Annotated § 67–4–809, it is required to apportion its earnings pursuant to Tennessee Code Annotated § 67–4–811 with some exceptions which are not pertinent here. *See* Tenn.Code Ann. §§ 67–4–814 through 67–4–816.

Plaintiffs' business does not come within the special apportionment provisions. They are therefore required to follow the provisions of Tennessee Code Annotated § 67–4–811.

Courts are to give effect to the intention or purpose of the legislature as expressed in a statute, and the "legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, when read in the context of the entire statute, without any force or subtle construction to limit or extend the import of the language." *Worrall v. Kroger Co.,* 545 S.W.2d 736, 738 (Tenn.1977).

The natural and ordinary meaning of the language used in Tennessee Code Annotated § 67–4–811 requires a taxpayer to apportion its earnings in accordance with the taxpayer's own property, payroll, and sales factors as set forth in the statute. This statute is not ambiguous and leaves no basis for which plaintiffs may contend that the clear definition of the statutory portion should be ignored. This formula is required to be used by all taxpayers except those filing under the special apportionment provisions.

Notwithstanding plaintiffs' contentions, Tennessee Code Annotated § 67–4–811 does not indicate that a taxpayer can change the definition of net earnings set forth in Tennessee Code Annotated § 67–4–805 and utilize a computation of net earnings which is based on the combined earnings of a unitary group, nor does it specify that a taxpayer may change its apportionment formula to include payroll, property, and sales values for a unitary group of which it may be a member. The statute specifies that the content of the numerator is to be the property, payroll, and sales factors of the taxpayer whose income or net earning is being apportioned under Tennessee Code Annotated § 67–4–811.

Our Supreme Court in *Kellogg Co. v. Olsen,* 675 S.W.2d 707, 708–09 (Tenn.1984) held that Tennessee Code Annotated § 67–4–805 provides a "precise statutory definition" of net earnings which is unambiguous, and therefore left the court no room to read an implied exception into the definition. "The courts are restricted to the natural and ordinary meaning of the language used in the statute, unless an ambiguity requires resort elsewhere to ascertain legislative intent." *Id.* at 708. We are of the opinion that a similar analysis is required of the unambiguous definition of the statutory apportionment formula set forth in Tennessee Code Annotated § 67–4–811. A resort to legislative history of Tennessee Code Annotated § 67–4–811 is not required since this section is unambiguous.

Plaintiffs have argued that the Commissioner adopted a "strict separate entity accounting method." We find nothing in this record to show that the Commissioner adopted a "strict separate entity accounting method," but are of the opinion that the position of the Commissioner is that each taxpayer must apportion its net earnings in accordance with the formula set forth in Tennessee Code Annotated § 67–4–811.

The Commissioner denied the plaintiffs' petition for variance for the tax year 1984 and requested that the plaintiffs file their 1984 corporate excise tax returns pursuant to the apportionment formula provided in Tennessee Code Annotated § 67–4–811. Plaintiffs filed those returns on 1 April 1986. They filed similar returns for 1985 and 1986. Each of these returns indicate that the plaintiffs computed their apportionment ratios by utilizing the property, payroll, and sales factors of each taxpayer to determine the apportionment ratio for each taxpayer. This ratio was then applied against net earnings of each taxpayer as computed pursuant to Tennessee Code Annotated § 67–4–805.

The legislative intent of Tennessee Code Annotated § 67–4–812(c) limits the authority

U.S.C. §§ 241–247 and 249–250, and subject to the adjustments in subsection (b).

of the Commissioner to adopt combined reporting to the circumstances in which there has been a shifting of income among affiliated corporations resulting in distortion of income.[3]

The foregoing was adopted by the General Assembly when it adopted the Uniform Division of Income for Tax Purposes Act in 1976 as the apportionment formula to be utilized for excise taxes.

A review of the legislative history of this section clearly indicates that it was the intent of the legislature that the Commissioner of Revenue's authority in the area of combined reports, be limited to situations in which taxpayers are attempting to distort income or evade taxes by shifting income among affiliated corporations.

Tennessee Code Annotated § 67–4–812(c) specifies the conditions under the excise tax law where combined reporting is permitted. Plaintiffs contend that the standard apportionment formula in Tennessee Code Annotated § 67–4–811 is a general formula which requires the adoption of an appropriate "accounting method" to determine the content of the formula. Plaintiffs contend that their "combined accounting method" is the appropriate method rather than the "strict separate accounting method" which they contend the Commissioner has adopted. The Commissioner has required the plaintiffs to file their returns using the apportionment formula set forth in Tennessee Code Annotated § 67–4–811. The Commissioner contends that Tennessee Code Annotated § 67–4–811 does not permit or require the adoption of the accounting methods suggested by the plaintiffs. We agree.

■ The apportionment formula in Tennessee Code Annotated § 67–4–811 requires each taxpayer to apportion its net earnings using its own value of property, payroll, and sales. The combined reporting and apportionment method advanced by plaintiffs produces a different formula. Plaintiffs first compute the combined or consolidated income of the group of AT & T affiliates by taking the consolidated federal amount of all AT & T affiliated companies and adjusting the consolidated number by making additions and subtractions of income and expenses listed in Tennessee Code Annotated § 67–4–805, as if those adjustments applied for all eighty AT & T affiliated companies in the group. This combined, consolidated income amount is then multiplied by an apportionment ratio which is computed on a combined basis. The combined apportionment formula utilized by the plaintiffs is calculated by computing each factor for the individual taxpayer's value of property, payroll, or sales within Tennessee and dividing that value by the combined property, payroll, or sales of all eighty of the AT & T affiliated corporations in the group in all states. Plaintiffs combined apportionment formula is not the same apportionment formula defined in Tennessee Code Annotated § 67–4–811. We find nothing in Tennessee Code Annotated § 67–4–811 which requires or permits a taxpayer or the Commissioner to adopt alternative formulas, either combined or separate, or requires or permits combined apportionment. The apportionment formula in Tennessee Code Annotated § 67–4–811 is not designed for a unitary group. The standard apportionment formula is designed for each separate taxpayer.

Tennessee Code Annotated § 67–4–815 specifically indicates that it applies to a uni-

---

3. Tennessee Code Annotated 67–4–812(c)(1):

In order to prevent the evasion of taxes or to clearly reflect income under circumstances similar to those contemplated by § 482 of the Internal Revenue Code (26 U.S.C. § 482), the commissioner is given the authority to:

(A) Make allocations of income, deductions, and other tax attributes among members of an affiliated group of corporations; or

(B) Require combined reports utilizing a common apportionment formula covering members of an affiliated group of corporations but only where all of the following conditions are present:

(i) Each corporation must be organized under the laws of a state of the United States;

(ii) Each corporation's commercial domicile must be in the United States; and

(iii) A substantial portion of the business of each corporation must be carried on in the United States in that the business carried on out of the United States must be merely incidental to the United States business.

(2) For purposes of this subsection, "affiliated group" has the same meaning attributed to it by § 1504 of the Internal Revenue Code (26 U.S.C. § 1504).

tary group. The terms unitary group and unitary business, as they are utilized in the application of this act, are specifically defined in Tennessee Code Annotated § 67–4–804(a)(13). Tennessee Code Annotated § 67–4–817(d) requires financial institutions which form a unitary business, as that term is defined, to file a combined return. These provisions were enacted in 1990 and are not applicable to the plaintiffs. They are indicative of the type of provisions which the legislature could have enacted if the legislature had intended for combined reporting to be permitted or required under Tennessee Code Annotated § 67–4–811.

Defendants contend that combined reporting is incompatible with the requirements for determining net taxable earnings subject to apportionment. Tennessee Code Annotated § 67–4–805 defines net earnings of a corporation as "federal taxable income before the operating loss deduction and special deductions provided for in 26 U.S.C. §§ 241–247 and 249–250, and subject to the adjustments in subsection (b)." The combined reporting method contended for by the plaintiffs would require the combination of the income of all AT & T affiliated companies, even though approximately 90% of all the companies have no nexus or business activity in Tennessee or contacts with the State of Tennessee. This is contrary to the legislative intent.

■ Plaintiffs also argue that the combined reporting method is required because it is consistent with the principles on which the Tennessee excise tax law is based. State taxes levied on interstate corporate income are subject to the requirements of the Commerce Clause and the Due Process Clause; therefore, a brief summary of the basic requirements of these provisions follows. "As a general principle, a State may not tax value earned outside its borders." *Asarco, Inc. v. Idaho State Tax Comm'n.,* 458 U.S. 307, 315, 102 S.Ct. 3103, 3108, 73 L.Ed.2d 787, 794 (1982). A state tax, when applied to interstate commerce, will be sustained under the Commerce Clause analysis, "when the tax is applied to an activity with a substantial nexus within the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the

services provided by the State." *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326, 331 (1977). If a state is to tax income generated in interstate commerce, "the Due Process Clause of the Fourteenth Amendment imposes two requirements: a 'minimal connection' between the interstate activities and the taxing State, and a rational relationship between the income attributed to the State and the intrastate values of the enterprise." *Mobil Oil Corp. v. Commissioner of Taxes of Vermont,* 445 U.S. 425, 436–437, 100 S.Ct. 1223, 1231, 63 L.Ed.2d 510, 520 (1980). "Such apportionment formula must, under the Due Process and Commerce Clauses, be fair." *Container Corp. of America v. Franchise Tax Bd.,* 463 U.S. 159, 169, 103 S.Ct. 2933, 2942, 77 L.Ed.2d 545, 556 (1983).

■ States are given wide latitude under the Federal Constitution to adopt various methods for attributing earnings to a taxing state. *See Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 279, 98 S.Ct. 2340, 2347–48, 57 L.Ed.2d 197, 208 (1978). "[T]he Constitution imposes no single formula on the States ..." *Container Corp.,* 463 U.S. at 164, 103 S.Ct. at 2939, 77 L.Ed.2d at 552.

> There are three ways by which corporate income may be divided for excise tax purposes: (1) separate accounting; (2) allocation; and (3) apportionment. Allocation seeks to trace income to a source in a particular state and then attribute that income to that state. Apportionment takes all the corporate income and divides it among all jurisdictions where business is done, based on a formula that takes property, payroll, and sales into account.

*Holiday Inns, Inc. v. Olsen,* 692 S.W.2d 850, 852 (Tenn.1985) (footnote omitted). Separate accounting seeks to determine a corporation's profits from its operations in each state as if conducted as separate entities to determine the profits attributable to each state's portion of the company's business. *Id.*

From a historical perspective, separate accounting was considered the "most precise method" of dividing income of a multi-state corporation when state corporate income taxes were first adopted. *See Atlantic Richfield Co. v. State,* 705 P.2d 418, 429 (Alaska 1985).

In *Hans Rees' Sons, Inc. v. North Carolina*, 283 U.S. 123, 127–28, 51 S.Ct. 385, 387, 75 L.Ed. 879, 895–96 (1931) the Supreme Court invalidated a state apportionment formula because the taxpayer's separate accounting method showed that only 17% of its income was attributable to the state, while the statutory apportionment formula taxed 66 to 85% of the taxpayer's income. An apportionment formula may be "invalidated only if the taxpayer established by clear and cogent evidence that the formula taxes extraterritorial values." *See Butler Bros. v. McColgan*, 315 U.S. 501, 507, 62 S.Ct. 701, 704, 86 L.Ed. 991, 996 (1942).

When the Tennessee excise tax was revised in 1976, Tennessee Code Annotated § 67–2725 required separate accounting for construction and related businesses. Separate accounting is employed by some states with respect to oil production income. *See Atlantic Richfield Co.*, 705 P.2d at 429. The court defined separate accounting as follows:

> Separate accounting attempts to carve out of the taxpayer's overall business the income derived from sources within a single state, and by accounting analysis, to determine the profits attributable to that portion of the business. Income within the state is determined without reference to the success or failure of the taxpayer's activities in other states.

*Id.* at 422 (footnotes omitted).

Tennessee's standard apportionment formula, set forth in Tennessee Code Annotated § 67–4–811, may be referred to as requiring "separate entity reporting," however, that formula is not equivalent to separate accounting. The standard apportionment formula in Tennessee Code Annotated § 67–4–811 produces a ratio which is multiplied by the taxpayer's apportionable income. The requirement that each corporation use a standard formula, unless subject to the special formula apportionment provision, is a matter of Tennessee legislative policy.

■ Plaintiffs also contend that combined reporting is required because it is based on the unitary business principle, and the excise tax law is based on this principle. All formula apportionment methods used by states are necessarily limited by the "unitary business principle" as a matter of constitutional law. The "unitary business principle" is a judicial concept derived from the requirements of the Due Process and Commerce Clauses, which permits states to apportion income earned in interstate commerce if the taxpayer's operations in state and out of state are unitary. *Mobil Oil v. Vermont*, 445 U.S. at 438, 100 S.Ct. at 1232, 63 L.Ed.2d at 521.

■ In *Mobil Oil*, Mobil contended that there was a lack of nexus between Vermont and the dividends included in its tax base. The Supreme Court, in response to this due process challenge, held that nexus existed since Mobil was engaged in a "unitary business." The court stated: "[T]he linchpin of apportionability in the field of state income taxation is the unitary-business principle." *Mobil Oil*, 445 U.S. at 439, 100 S.Ct. at 1232, 63 L.Ed.2d at 522. In *Asarco* the court observed that the "unitary business limitation" for state apportionment is similar to the due process requirements of "a minimal connection between the interstate activities of the taxing state and a rational relationship between the income attributed to the state and intrastate values of the enterprise." *Asarco*, 458, U.S. at 316, 102 S.Ct. at 3109, 73 L.Ed.2d at 795. When a corporation's instate and out-of-state operations are unitary, the state necessarily has a minimum connection with the out-of-state activities.

The unitary business concept is illustrated by the holding in *Dickey Clay Mfg. Co. v. Dickinson*, 200 Tenn. 25, 289 S.W.2d 533 (1956). In *Dickey Clay* the taxpayer manufactured and sold glazed sewer pipe and had five manufacturing plants, only one of which was in Tennessee. *Id.* 289 S.W.2d at 535. The court found that there was unity of ownership, unity of management, and unity of use and that the existence of these unities characterized the business of the corporation as being unitary as opposed to multiform. *Id.* 289 S.W.2d at 537. The court held that the unitary nature of the business sustained the state's right to tax a portion of the taxpayer's entire net earnings on the basis of an allocation formula. *Id.*

If the taxpayer's income had been derived from unrelated business activity which con-

stitutes a discreet business enterprise, the state would have been limited to taxing only those net earnings arising from its Tennessee operation. The defendant contends that although the constitutional requirements observed by the legislature in the excise tax law are observed in other states which have adopted combined reporting as their method of apportionment, this similarity between all apportionment methods does not reveal a legislative intent to adopt combined reporting. The Tennessee General Assembly chose separate entity reporting as the standard method of apportionment in the adoption of Tennessee Code Annotated § 67–4–811.

The Tennessee legislature adopted the Uniform Division of Income for Tax Purposes Act (UDITPA) in 1976. The legislature delegated authority to the Commissioner of Revenue to permit or require a variance from the standard apportionment formula when the formula does not "fairly represent the extent of the taxpayer's business activity in this state." *See* Tenn.Code Ann. § 67–4–812. This section is often referred to as a "relief provision," and it was adopted from section 18 of the UDITPA. It reads as follows:

> If the allocation and apportionment provisions of this part do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for or the commissioner may require, in respect to all or any part of the taxpayer's activity, if reasonable:
>
> (1) Separate accounting;
>
> (2) The exclusion of any one (1) or more of the factors;
>
> (3) The inclusion of one (1) or more additional factors which will fairly represent the taxpayer's business activity in this state; or
>
> (4) The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's earnings.

Tenn.Code Ann. § 67–4–812(a).

■ The Commissioner may therefore exercise reasonable discretion in determining whether facts or circumstances justify a departure from the statutory formula. In *Peterson Mfg. Co. v. State*, 779 S.W.2d 784, 787 (Tenn.1989), the court held that the burden was upon the taxpayer to establish that its own unique facts and circumstances justify a departure from the standard apportionment formula. The court noted that the taxpayer seeking a variance must provide clear and cogent evidence that the formula does not fairly represent its business activities in Tennessee. *Id.* at 786, 787. The court also cited Franchise/Excise Tax Rule 35 with approval, noting that this rule provides that a taxpayer must show by clear and cogent evidence that the taxpayer's own particular or unusual circumstances demonstrate that the application of the standard three factor formula would work a hardship or injustice upon the taxpayer. *Id.*

■ While opinions of courts in other states which have adopted the UDITPA are not binding in Tennessee, the court in *Holiday Inns, Inc. v. Olsen* indicated that the court would give serious consideration to constructions given to similar statutes in other jurisdictions and espouse conformity when those decisions are in harmony with the public policy in Tennessee. *Holiday Inns,* 692 S.W.2d at 853. Other states have held that the purpose of the Uniform Act was to provide a method of apportionment which could be applied in all jurisdictions, so that no more than 100% of a corporation's income would be subject to tax in all jurisdictions. *Donovan Constr. v. Michigan Dept. of Treasury,* 126 Mich.App. 11, 337 N.W.2d 297, 300 (1983). It is the intent of UDITPA that the standard formula be applied uniformly in all instances, except for those situations provided for in the relief provisions of section 18 of the Uniform Act [codified at Tenn.Code Ann. § 67–4–812]. *See Donald M. Drake Co. v. Department of Revenue,* 263 Or. 26, 500 P.2d 1041, 1043–44, (1972).

■ The standard statutory apportionment formula is presumed to be correct, and the party seeking to employ an alternate method has the burden of showing that the statutory method is inappropriate. *Donald M. Drake Co.,* 500 P.2d at 1043–44; *Donovan,* 337 N.W.2d at 300. The variance provision applies only in unusual and limited circumstances and is to be interpreted narrowly in order to carry out the purpose of uniform

apportionment under the act. *Donald M. Drake Co.*, 500 P.2d at 1044. The burden is on the party seeking a variance to establish that the formula does not fairly represent its business activities in the taxing state. *Donald M. Drake Co.*, 500 P.2d at 1041; *Deseret Pharm. Co. v. State Tax Comm'n.*, 579 P.2d 1322, 1326–27 (Utah 1978). The tax administrator does not have authority to adopt an alternative formula until the taxpayer has satisfied the burden of showing that the three factor formula distorts, or unfairly represents income attributable to business activity of the taxpayer. *See St. Johnsbury Trucking Co. v. State*, 118 N.H. 209, 385 A.2d 215, 217–18 (N.H.1978).

Courts of other states have given this provision a narrow interpretation in order not to defeat the purpose of the Uniform Act. *Donald M. Drake Co.*, 500 P.2d at 1044; *Deseret Pharm. Co.*, 579 P.2d at 1326. We have found no Tennessee case, nor been cited one, which has fully enunciated the scope of a taxpayer's burden under this section. The decision in *Peterson Mfg. Co.* is consistent with the application of the Uniform Act and other UDITPA states. The courts of other states applying this section of the Uniform Act have concluded that the taxpayer seeking a variance must show that the standard formula distorts the income attributable to business activities in the taxing state, or produces an unreasonable result, such as, the taxes imposed which are grossly disproportionate to the taxpayer's business activity in the state, or extraterritorial income being taxed. *See e.g., Deseret Pharm. Co.*, 579 P.2d at 1327. There is a strong presumption in favor of the normal apportionment formula and against the applicability of the relief provision. *Roger Dean Enter. v. State*, 387 So.2d 358, 363 (Fla.1980).

Other states which have adopted the UDITPA have concluded that the relief provision is intended to provide relief in exceptional circumstances which produced unconstitutional apportionment. With respect to the circumstances justifying use of the relief provision, the Florida Supreme Court held in *Roger Dean Enter.*, 387 So.2d 358: "The relief provision should be used when the statute reaches arbitrary or unreasonable re-sults so that its application could be attacked successfully on constitutional grounds." *Id.* at 363.

Decisions regarding relief provisions have indicated that the purpose of such provisions was to assure that the apportionment of interstate source income provides a division which satisfies the requirements of fair apportionment under the Federal Constitution. *See American Bemberg Corp. v. Carson*, 188 Tenn. 263, 219 S.W.2d 169, (1949); *Dickey Clay Mfg. Co. v. Dickinson*, 200 Tenn. 25, 289 S.W.2d 533 (1956), which construed the relief provision in the apportionment provisions of the Tennessee excise tax law in effect prior to 1976. The weight of authority indicates that this is the intended purpose of section 18 of UDITPA, and the standards regarding fair apportionment are applicable in determining whether the apportionment formula "fairly represents the taxpayer's activity" in Tennessee under Tennessee Code Annotated § 67–4–812(a).

The evidence in this case established that the apportionment formula for each of the plaintiffs was fairly related to each plaintiff's business activities in Tennessee. The computation of the apportionment formula is on Schedule N of the Franchise/Excise Tax Return.

The Chancellor noted that five of the plaintiffs would be required to pay more tax under their combined method. Two of the plaintiffs had no tax due in any of the tax years. An examination of the ratios for two remaining plaintiffs, AT & T and AT & T–SCS, illustrates that the standard apportionment formula of each taxpayer fairly represents its business activities in Tennessee. The apportionment ratio is summarized as follows for AT & T and AT & T–SCS:

**AT & T Apportionment Ratios (1984 to 1986)**

|      | Property | Payroll | Sales  | Ratio   |
|------|----------|---------|--------|---------|
| 1984 | .9924%   | 1.3412% | .7916% | 1.0417% |
| 1985 | .9313%   | 1.2006% | .9565% | 1.0295% |
| 1986 | 1.0577%  | 1.0224% | .9070% | .9957%  |

**AT & T South Central States (AT & T—SCS) Apportionment Ratios (1984–1986)**

|      | Property  | Payroll  | Sales    | Ratio    |
|------|-----------|----------|----------|----------|
| 1984 | 20.9043%  | 25.7976% | 22.8096% | 23.1705% |
| 1985 | 20.3577%  | 26.1339% | 22.2176% | 22.9031% |
| 1986 | 21.6319%  | 28.6377% | 23.6632% | 24.6443% |

A review of the factors indicates that there is little deviation from one factor to another for each of the years. When the factors are averaged to produce the apportionment ratio, any deficiency of each factor is offset and a balanced formula results.

The three factors of the standard formula are representative of the manner in which the businesses generate value. When the three factors of the plaintiff are reviewed it is obvious that they have substantial amounts of property, payroll, and sales in Tennessee. The ratios produced by the standard formula for each plaintiff are rationally related to their activities in Tennessee. The parties stipulated that the in-state property, payroll, and sales values of AT & T were the property, payroll, and sales values of AT & T's Interstate Division, which handled interstate telecommunication services. The tax returns show that AT & T had the following amounts of property, payroll, and sales, with respect to the interstate telecommunication services in Tennessee:

|  | Property | Payroll | Sales |
|---|---|---|---|
| 1986 | $209,864,484 | $ 9,254,343 | $ 95,242,497 |

AT & T—SCS had the following values of property, payroll, and sales in Tennessee for 1986:

|  | Property | Payroll | Sales |
|---|---|---|---|
| 1986 | $288,411,472 | $ 19,271,965 | $138,507,396 |

These values constitute the respective Tennessee percentages of the corporation's total property, payroll, and sales for the year 1986. The parties stipulated that the company conducted intrastate communication operations in the five states of Tennessee, Alabama, Kentucky, Mississippi, and Louisiana. The companies' operations are regulated by the Federal Communications Commission and the Tennessee Public Service Commission, and the companies financial accounts are maintained in accordance with the Uniform System of Accounts prescribed by the FCC and the state regulatory agencies. The property, payroll, and sales figures used in the apportionment formula calculations reflect the property allocated to Tennessee by the jurisdictional separation process. The payroll figure represents the employees directly involved in the Tennessee intrastate operations, and the sales figures represent the allocation of the sales of the telecommunication services to Tennessee. These factors are rationally related to the companies' business activities in Tennessee.

The plaintiffs failed to meet the burden required to justify departure from the normal statutory apportionment formula. The judgment of the Chancellor is affirmed and the cause remanded to the Chancery Court for any further necessary proceedings. Costs on appeal are taxed to the plaintiffs/appellants.

TODD, P.J., and KOCH, J., concur.