IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 25, 2009 Session

# BELLSOUTH ADVERTISING & PUBLISHING CORPORATION, v. LOREN L. CHUMLEY, COMMISSIONER OF REVENUE, STATE OF TENNESSEE

Direct Appeal from the Chancery Court for Davidson County
No. 04-2232-IV    Hon. Richard H. Dinkins, Chancellor

No. M2008-01929-COA-R3-CV - Filed August 26, 2009

Plaintiff is subject to excise and franchise taxes in the State of Tennessee. For the five year period at issue the Commissioner issued a variance pursuant to the Uniform Division of Income for Tax Purposes Act which has been adopted by Tennessee. The variance enabled the Commissioner to alter the taxing formula and increase the amount of revenue assessed to plaintiff. Plaintiff filed this action in Chancery Court and the Chancellor voided the variance. On appeal, we hold that the Commissioner properly exercised her discretion in issuing the variance. We reverse the Chancellor and remand.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and JOHN W. MCCLARTY, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, Charles L. Lewis, Deputy Attorney General, and Joe C. Peel, Senior Counsel, Nashville, Tennessee, for Appellant, Commissioner of Revenue.

James W. McBride, Washington, D.C., and Carolyn W. Schott, Nashville, Tennessee, for Appellee, Bellsouth Advertising & Publishing Corporation.

**OPINION**

The determinative issue in this case is whether the defendant/appellant, Tennessee Department of Revenue (Commissioner) properly issued a variance pursuant to Tenn. Code Ann. §§ 67-4-2014 and 67-4-2112 which required plaintiff/appellee BellSouth Advertising & Publishing Corporation (BAPCO) to depart from the standard statutory apportionment formula in determining its Tennessee excise and franchise tax. The years at issue are 1997-2001. The excise and franchise tax statutes currently in effect govern the years 1999-2001. The excise and franchise tax statutes were substantially revised and reenacted in 1999. For the 1997-1998 years at issue, we affirm the controlling statutes are former Tenn. Code Ann. §§ 67-4-81 and 67-4-910. However, the parties correctly agreed that for the issues under consideration in this case, the provisions of the current excise and franchise tax statutes and of those repealed in 1998 are substantially the same. The current statutes will be utilized with a footnote reference to the citations of the repealed statutes.

**Background**

Tennessee has adopted the Uniform Division of Income for Tax Purposes Act (UDITPA) and the Multistate Tax Commission (MTC) regulations, which provide the allocation and apportionment provisions for taxpayers who are taxable in more than one state. The goal of the UDITPA and the Tennessee statutes modeled on it is to ensure that each state taxes an appropriate portion of a corporation's income, so that no more than 100% of its income will be subject to tax in all jurisdictions. *See Donovan Constr. Co. v. Michigan Dept. of Treasury*, 337 N.W.2d 297, 300 (Mich. 1983). As BAPCO conducts business and derives income in nine states, its income is taxable within Tennessee and in those other states.

Tennessee's franchise and excise taxes are imposed upon all corporations for the privilege of doing business in the state. *First Am. Nat'l Bank v. Olsen*, 751 S. W. 2d 417, 421 (Tenn. 1987); *Cook Export Corp. v. King*, 652 S.W.2d 896, 900 (Tenn. 1983). Tenn. Code Ann. § 67-4-2001 *et seq.*[1] pertains to excess tax and Tenn. Code Ann. § 67-4-2101 *et seq.*[2] pertains to franchise tax. Tenn. Code Ann. § 67-4-2007[3] provides for the imposition of an excise tax:

> (a) All persons, except those having not-for-profit status, doing business in Tennessee shall, without exception other than as provided in this part, pay to the commissioner, annually, an excise tax, in addition to all other taxes, equal to six and one half percent (6 ½ %) of the net earnings for the next preceding fiscal year for business done in this state during that fiscal year.

---

[1] Formerly § 67-4-801 *et seq.* (Repl. 1998).

[2] Formerly § 67-4-901 *et seq.* (Repl. 1998).

[3] Formerly § 67-4-806 *et seq.* (Repl. 1998).

The Excise Tax Law of 1999 also provides for multistate taxpayers like BAPCO to allocate and apportion their taxable income to Tennessee under a statutorily prescribed formula. The applicable allocation and apportionment provisions are set out in Tenn. § 67-4-2010.[4] [5]

> (a) Any taxpayer having business activities that are taxable both inside and outside the state of Tennessee shall allocate or apportion its net earnings or losses as provided in this part.
>
> (b) For purposes of allocation and apportionment of net earnings or losses under this part, a taxpayer is taxable in another state if:
>
> (1) In that state it is subject to a net income tax, a franchise tax measured by net income, a franchise tax for the privilege of doing business, or a corporate stock tax; or
>
> (2) That state has jurisdiction to subject the taxpayer to a net income tax regardless of whether, in fact, the state does or does not.

The Tennessee General Assembly adopted a formula for dividing income among the various states where a taxpayer does business based on the UDITPA. Tenn. Code Ann. § 67-4-2012[6] defines the standard apportionment ratio as a fraction, the numerator of which is the sum of the property, payroll and sales factors of each taxpayer as defined in the statute and the denominator is four (4). Tenn. Code Ann. § 67-4-2012(a). The statute defines each factor as a fraction in which the numerator is the taxpayer's respective property, payroll or sales values in Tennessee and the denominator is the taxpayer's respective property, payroll or sales values in all jurisdictions. Tenn. Code Ann. § 67-4-2012(b)-(g). Of critical importance to the issues under consideration here are the provisions found in Tenn. Code Ann. § 67-4-2012(h) and (I):

> h) Sales of tangible personal property are in this state, if:
>
> (1) The property is delivered or shipped to a purchaser, other than the United States government, inside this state regardless of the F.O.B. point or other conditions of the sale; or

---

[4] Formerly Tenn. Code Ann. 67-4-809.

[5] Tenn. Code Ann. 67-4-2010 was amended in 2006, however as the amendment applies to tax years beginning on or after January 1, 2006 it has no implication here.

[6] Formally Tenn. Code Ann. § 67-4-2012.

(2) The property is shipped from an office, store, warehouse, factory or other place of storage in this state and the purchaser is the United States government.

(I) Sales, other than sales of tangible personal property, are in this state, if the **earnings-producing activity** is performed:

(1) In this state; or

(2) Both in and outside this state and a greater proportion of the earnings-producing activity is performed in this state than in any other state, **based on costs of performance**. (Emphasis supplied).

The parties stipulated that BAPCO's sales at issue in the case are sales other than sales of tangible personal property and that BAPCO earned its income by providing advertising services. They further stipulated that unless a variance is proper, the provisions found in Tenn. Code Ann. §§ 67-4-2012(i)(excise) and 67-4-2111(i)[7](franchise) for determining the numerator of the receipts factor are applicable.

Franchise & Excise Tax Rule 1320-6-1-.34(2) (Rule 34) provides definitions and rules contained in Tenn. Code Ann. § 67-4-2012(i) as follows. The rule references Tenn. Code Ann. § 67-4-811(i), the former designation of what is now § 67-4-2012(i) :

(1) In General. T.C.A. § 67-4-811(i) [now § 67-4-2012(i)] provides for the inclusion in the numerator of the sales factor of gross receipts from transactions other than sales of tangible personal property (including transactions with the United States Government); under this section gross receipts are attributed to this state if the earnings producing activity which gave rise to the receipts is performed wholly within this state. Also, gross receipts are attributed to this state if, with respect to a particular item of income, the earning producing activity is performed within and without this state but the greatest proportion of the earnings producing activity is performed in this state, based on cost of performance.

(2) Earnings Producing Activity; Defined. The term "earning producing activity" applies to each separate item of income and means the transactions and activity directly engaged in by the taxpayer in the regular course of its trade or business for the ultimate purpose of obtaining gains or profit. Such activity does not include transactions performed on behalf of a taxpayer, such as those conducted on its behalf by an independent contractor. Accordingly, the earnings producing activity includes but is not limited to the following:

---

[7] Formally Tenn. Code Ann. § 67-4-911.

(a) The rendering of personal services by employees or the utilization of tangible and intangible property by the taxpayer in performing a service.

(b) The sale, rental, leasing, licensing or other use of real property.

(c) The rental, leasing, licensing or other use of tangible personal property.

(d) The sale, licensing or other use of intangible personal property.

The mere holding of intangible personal property is not, of itself, an earning producing activity.

(3) Cost of Performance; Defined. The term "costs of performance" means direct costs determined in a manner consistent with generally accepted accounting principles and in accordance with accepted conditions or practices in the trade or business of the taxpayer.

(4) Application.

(a) In General. Receipts (other than from sales or tangible personal property) in respect to a particular earnings producing activity are in this state if:

1. the earnings producing activity is performed wholly within this state; or

2. the earnings producing activity is performed both in and outside this state and a greater proportion of the earnings producing activity is performed in this state than in any other state, based on costs of performance.

UDITPA contemplates that at times a taxpayer or the department of revenues may believe that a variance from the apportionment formula is needed. Tennessee's excise and franchise tax statutes and regulations follow UDITPA's recommended provisions. Tenn. Code Ann. § 67-4-2014 provides:

(a) If the tax computation, allocation or apportionment provisions of this part or chapter 2 of this title do not fairly represent the extent of the taxpayer's business activity in this state, or the taxpayer's net earnings, the taxpayer may petition for, or the department through its delegates may require, in respect to all or any part of the taxpayer's business activity, if reasonable:

(1) Separate accounting;

(2) The exclusion of any one (1) or more of the formula factors;

(3) The inclusion of one (1) or more additional apportionment formula factors that will fairly represent the taxpayer's business activity in this state;

(4) The use of any other method to source receipts for purposes of the receipts factor or factors of the apportionment formula numerator or numerators; or

(5) The employment of any other method to effectuate an equitable computation, allocation and apportionment of the taxpayer's net earnings or losses that fairly represents the extent of the business entity's activities in Tennessee.

The corresponding regulation to the variance statutes is found at Tennessee Rules and Regulations, Rule 1320-6-1-.35 (Rule 35) as follows:

(1) In General.

(a)    T.C.A. §§ 67-1-911 and 67-4-812 [now Tenn. Code Ann. §§ 67-1-2014 and 67-4-2012] provide that if the allocation and apportionment provisions do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for or the Commissioner of Revenue may require, in respect to all or any part of the taxpayer's business activity, if reasonable:

\* \* \* \*

4.    The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's capital and net earnings for purposes of computing franchise and excise taxes. §§ 67-1-911 and 67-4-812 [now Tenn. Code Ann. §§ 67-1-2014 and 67-4-2012] permit a departure from the allocation and apportionment provisions only in limited and specific cases. §§ 67-1-911 and 67-4-812 may be invoked only in specific cases where unusual fact situations (which ordinarily will be unique and nonrecurring) produce incongruous results under the apportionment and allocation provisions contained in the Franchise and Excise Tax Laws.

**Pleadings**

BAPCO filed a complaint to challenge the assessment of excise and franchise taxes for the years 1997 to 2001 against Loren L. Chumley in her capacity as the Commissioner of Revenue for the State of Tennessee on July 29, 2004 in the Chancery Court, pursuant to Tenn. Code

Ann. § 67-1-1801(a)(1)(B).[8] In the complaint BAPCO characterized itself as engaged in the business of compiling and publishing telephone directories pursuant to contracts with regulated and other telecommunications providers including BellSouth Telecommunications, Inc., which is an affiliated corporation that provides telecommunications services in Tennessee and eight other Southern States. BAPCO represented that its revenues were predominately derived from providing advertising services for the directories it published and that these advertising services were associated with various functions that were all performed outside the state of Tennessee. An affiliated corporation of BAPCO's., L. M. Berry, solicited advertising sales for the directories published by BAPCO in Tennessee and other states. L. M. Berry functions as an independent contractor and is subject to Tennessee excise and franchise taxes on its own net earnings derived from its activities performed on behalf of BAPCO in Tennessee. BAPCO likewise engages another affiliated corporation, Stevens Graphics, Inc., as an independent contractor to print the directories BAPCO publishes for distribution in Tennessee and other states. Stevens prints all of the directories outside the state of Tennessee. The finished directories are then distributed by an independent contractor that is not corporately affiliated with BAPCO.

The complaint stated that following an audit by the Tennessee Department of Revenue, Audit Department, BAPCO received a Notice of Assessment dated May 15, 2004 for franchise and excise taxes for the period beginning January 1, 1997 and ending December 31, 2001. The Notice of Assessment set forth tax liability in the amount of $9,866,769.0 and interest of $3, 243,892.00, for a total of $13,110,661.00. BAPCO's complaint challenges the Notice of Assessment pursuant to Tenn. Code Ann. § 67-1-1801(a)(1)(B), based on its position that it correctly calculated its Tennessee tax liability for the tax periods at issue by utilizing the cost of performance methodology prescribed by Tenn. Code Ann. § 67-4-2012(i) and by the rules and regulations promulgated thereunder. BAPCO asked the Court for a judgment finding that it owes no additional franchise or excise taxes for the period at issue and for an award of costs, expenses and attorney's fees.

The Commissioner filed an answer and counterclaim on September 27, 2004, and stated the Commissioner's position that the statutory formula does not operate to fairly represent the extent of BAPCO's activities in Tennessee and that the Commissioner was within her statutorily granted discretion to apply a variance with respect to the tax years at issue. The counterclaim requested a judgment for the amount of the assessment plus interest, costs, expenses and attorney's fees. The parties then conducted discovery during 2005 and 2006 and the case was set for trial on January 29, 2007.

BAPCO filed a motion for partial summary judgment which addressed the threshold issue of whether BAPCO's sales are sales of tangible personal property or if its sales are other than sales of tangible personal property. It asserted that if the Court held that BAPCO's business was that of selling tangible personal property, telephone directories, Tenn. Code Ann. § 67-4-2012(h) would

---

[8] Tenn. Code Ann. § 67-1-1801(a)(1)(B) provides a taxpayer the right to file suit against the Commissioner challenging a tax assessment.

provide the apportionment formula for sourcing BAPCO's receipts to Tennessee. However, if the Court held that BAPCO's business was providing the service of advertising to its customers, the individuals and businesses that place advertisements in the directories, Tenn. Code Ann. § 67-4-2012(i) would provide the applicable apportionment formula based on a cost of performance method, but for the issuance of a variance.

On the heels of the motion for summary judgment, the parties entered into a stipulation that was intended to make a ruling on BAPCO's motion unnecessary. The stipulation provides:

> "BAPCO's sales at issue in the case are sales other than sales of tangible personal property and that BAPCO earned its revenue by providing advertising services. Unless a variance is proper under T. C. A. §§ 67-4-2014, 67-4-2112 and Tennessee Regulation, Rule 1320-6-1-.35, the statutory provisions for determining the numerator of the receipts factor of the standard apportionment formula for BAPCO are T. C. A. § 67-4-2012(i) and § 67-4-2111(i). It is understood and agreed that, from time to time, BAPCO does sell some books which are sales of tangible personal property and which are properly included in the numerator of the receipts factor.

The Court entered a pre-trial order, which reiterated the stipulation the parties entered into and set forth the contentions of BAPCO and the Commissioner. BAPCO's contentions are summarized as follows:

> The sole issue in this case is whether the Department may require BAPCO to depart from the otherwise applicable statute for sourcing receipts to Tennessee for purpose of the sales factor in its apportionment formula by issuing a variance claiming that the statutory formula does not fairly reflect BAPCO's business activity in the state.

The Department set forth two alternative contentions as follows:

First, the Department contended that use of the cost of performance analysis under Tenn. Code Ann. 67-4-2012(i) was correct but that BAPCO's conclusion that most of its performance associated with advertising was outside of Tennessee was wrong. The Department's position was that as BAPCO earns its Tennessee advertising revenues through its distribution of the directories in Tennessee, the receipts from advertising should be placed in the numerator of the sales factor. Additionally, the Department contended that the costs paid to BAPCO's affiliates, L. M. Berry and BellSouth, should be included in the costs of performance analysis.

The Department also contended, apparently in the alternative, that as BAPCO's computation of its apportionment formula under Tenn. Code Ann. 67-4-2012(i)(2) did not fairly reflect its business activity in Tennessee, the Commissioner properly imposed a variance of the standard apportionment formula pursuant to statute. The Commissioner's variance, which included

-8-

BAPCO's Tennessee advertising receipts in the numerator of the sales factor more fairly reflected BAPCO's business activity in Tennessee than BAPCO's application of the formula wherein its cost of performance outside of the state was not included in the numerator.

The Pretrial Order also set forth the following burdens of proof:

1.      BAPCO has the burden of showing whether Tenn. Code Ann. § 67-4-2012(i)(2) (cost of performance for services) applies.

2.      The Department has the burden of showing that a variance was proper.

**The Trial**

At the trial, BAPCO presented evidence regarding its business and described the flow of work from the sales of advertising through the distribution of the Yellow Pages to individuals and businesses in Tennessee. Ninety-five percent of BAPCO's revenue is derived from the delivery of advertising services to businesses and individuals who advertise in the Yellow pages directories. BAPCO provides advertising services for local and national businesses. Local advertising in Tennessee is solicited and handled by sales representatives from the L. M. Berry company, a corporation, and is subject to Tennessee excise tax liability. In addition to the sale of local advertising, L. M. Berry provides graphic artwork services to the advertisers in the directory, and during the years at issue, L. M. Berry was headquartered in Dayton, Ohio and maintained one of its regional offices in Brentwood, Tennessee. BAPCO prepares and maintains sales information in its Atlanta office for use by L. M. Berry in marketing to the five states covered by its sales agency contract with BAPCO. BAPCO has no sales personnel in Tennessee.

National advertising sales for the Yellow Pages are handled by certified marketing representatives located throughout the United States who sell and place advertisements for big national companies such as U-Haul, Hertz and Meineke. BAPCO's national advertising orders are processed from BAPCO's production office in Atlanta, Georgia.

BAPCO also has a production office in Birmingham, Alabama where it maintains its listing data base for both white and yellow pages. The sales support and advertising production personnel are located at the Birmingham office.

BAPCO's Atlanta, Georgia production office houses marketing support, finance, billing, legal human resources and distribution. The multiple consumer guides and community information pages contained in the Yellow Pages are compiled by BAPCO at the Atlanta facility. The covers of the directories are likewise designed and produced in Atlanta by BAPCO.

BAPCO transfers the finished directories in electronic form to a server for electronic pickup by Stevens Graphics, an independent company owned by BSC. Stevens Graphics prints and

binds the Yellow Pages in plants in either Birmingham or Atlanta. Once the directories are printed and bound, they are transferred for distribution to Directory Distribution Associates (DDA) for the actual delivery of the directories to homes and businesses in the covered area. DDA performs this function in Tennessee. The goal of BAPCO is to have the Yellow Pages[9] reach every residence and business in the area covered by a particular edition of the directory. .

During the years at issue, BAPCO produced and caused to be distributed 23,715, 829 directories in Tennessee. The directories were provided at no cost to the end-user, and almost all of BAPCO's revenues were derived from the sale of advertising in the directories. BAPCO's yearly revenues during the period at issue were between $160,000,000 and $200,000,000. ®. Vol. IX, pp. 505 - 506). BAPCO's advertising customers are not obligated to pay for the advertisements in the directories until they are distributed. If the customer's advertisement is not included in the directory, the customer is not required to pay for the advertisement.

The parties developed the background for the issuance of the variance at trial through the testimony of BAPCO's senior tax manager, Kimberly Hill. Ms. Hill explained that in 1997, Ernst & Young, an outside accounting firm BAPCO consulted with, brought to BAPCO's attention correspondence dating back to 1995 between the Tennessee Department of Revenue and Ernst & Young regarding a taxpayer (not BAPCO) with operations almost identical to those of BAPCO. The subject matter of the letter from Ernst & Young was how telephone directory revenues should be sourced to Tennessee. The 1995 letter was entered into evidence. A representative of the Department responded to the Ernst & Young inquiry and stated that the cost of performance regulation, Rule 1320-6-1.34 (Rule 34) was the "appropriate rule for this type of receipt." Ms. Hill explained that after reviewing the 1995 correspondence between Ernst & Young and the Department, she studied the Tennessee regulations and statutes with Ernst & Young and a decision was made, based on the letters and statutes, that BAPCO had not been filing its returns for Tennessee excise and franchise tax correctly. BAPCO amended its 1993, 1994 and 1995 returns and filed its return for the tax year 1996 in October of 1997 using the cost of performance method of apportionment pursuant to Rule 34.

In the fall of 1998, the Department commenced an audit of the amended 1993 through 1996 returns which resulted in a deficiency assessment against BAPCO. The Department's auditor did not find that BAPCO had any direct cost in Tennessee and stated in the audit that "[t]he wording of the Tennessee statutes and the facts and circumstances involved with BAPCO's business activities are not in dispute." Ms. Hill stated the Department did not like the use of the cost of performance method and wanted BAPCO to file using a market/circulation based method of sourcing revenues to Tennessee. Ms. Hill explained that the circulation based method is similar to the method used for the sale of tangible property which looks at where the sales take place rather than the cost of performance method used when there is a sale of a service. The difference between the sales factor on BAPCO's original returns and the amended returns for the years 1993, 1994 and 1995 was

---

[9] The white and yellow pages in Tennessee are published together as one directory in all of the directory coverage areas except Nashville and Memphis.

-10-

significant. The total amount on the original returns based on the circulation method was close to $400,000,000 while the amended returns for those three years showed a sales factor of just over $180,000. BAPCO filed suit against the Department in January 2000 based on the deficiency assessment for the years 1993 to 1996 and that suit was settled in May 2003.[10]

The evidence shows that an audit for the years 1997 through 2001 took place from February to April 2003 and was conducted by Chris Atherton, a Tax Auditor II for the Department. The result of the audit was a recommendation that the Commissioner issue a variance regarding the calculation of BAPCO's Tennessee excise and franchise tax because the Department determined that BAPCO's use of the location of its performance costs to allocate its advertising receipts under Tenn. Code Ann. § 67-4-2012(i) did not fairly represent the extent of its business activities in Tennessee. Mr. Atherton was asked to describe the major factors regarding BAPCO's business activities he considered when recommending that the Department issue the variance. He stated that he considered the following:

1. BAPCO is engaged in the selling of advertising and the production of telephone directories.
2. The selling of the advertising in Tennessee was not conducted by BAPCO but by an affiliated company, L. M. Berry.
3. BAPCO did not have any employees in Tennessee engaged in the selling of advertising.
4. BAPCO did not produce the directories in Tennessee, they were produced by an affiliated company, Steven's Graphics outside of Tennessee.
5. BAPCO had minimal property interest in Tennessee, had no payroll in Tennessee and very minimal sales in Tennessee. Thus the numerator in the sales factor apportionment calculation used by BAPCO was minimal.
6. During the time period audited, BAPCO had imported into Tennessee between four and five million directories a year which generated between $163,000,000 to almost $200,000,000 a year in advertising revenues.
7. It was the auditor's opinion that these revenue amounts "were not represented in the apportionment factors BAPCO used in its excise and franchise tax returns.

Mr. Atherton concluded that BAPCO had no direct costs in Tennessee for purposes of the cost of performance methodology, and he also used the same words he had used in the earlier audit: "The wording of the Tennessee statutes and the facts and circumstances involved with BAPCO's business activities are not in dispute." Based on these findings, the auditor recommended that the Department issue a variance to include BAPCO's receipts from advertising revenues earned from the directories shipped into Tennessee during the audit period in the sales factor numerator to more fairly reflect BAPCO's business activity in Tennessee. On November 14, 2003, the

---

[10] BAPCO claims in its appellate brief that the settlement was "highly favorable to BAPCO" but there is no evidence in the record to support that statement.

Commissioner issued a variance letter to BAPCO which sets forth the reasons for the variance and is helpful to understanding the issues raised on appeal. The letter states in part:

> After careful review of the facts in this matter, it has been determined that the statutory allocation and apportionment provision do not fairly represent the extent of business activities conducted in Tennessee by BAPCO. Accordingly, the decision has been made to require a variance for tax years subsequent to 1996 pursuant to the authority granted by T.C.A. §§ 67-4-2014 and 67-4-2112 (T.C.A. §§ 67-4-812 and 67-4-911 under prior law).
>
> BAPCO is a subsidiary of BellSouth Corporation. It is engaged in the business of selling advertising and in compiling, publishing and distributing the yellow pages directories . . . to [telecommunication] customers . . . free of charge.
>
> In Tennessee, BAPCO uses L. M. Berry . . . to solicit advertisements for its yellow page directories. BAPCO's artwork, directory production, data processing and administrative departments are located in Alabama and Georgia. BAPCO uses a printer located outside Tennessee to print the directories. Independent contractors deliver the directories to customers of BellSouth in Tennessee.
>
> In the tax year 2001, BAPCO generated $198,752,347 (10.2352% of [its] everywhere gross receipts) in advertising and other revenues from its Tennessee markets. Each year BAPCO imports several million copies of yellow pages directories and telephone directories into Tennessee to fulfill its advertising contracts with Tennessee customers.
>
> However, BAPCO has a relatively small physical presence in Tennessee. In the tax year 2001, its Tennessee assets amounted to only $400,660 (0.1511% of total assets) . . . and its Tennessee payroll amounted to only $97,124 (0.0530% of total payroll).
>
> On franchise and excise tax returns filed with the Department for the calendar years 1997 through 2001, BAPCO included all of its advertising revenues in its everywhere apportionment formula receipts factor. However, none of the advertising revenues generated from Tennessee markets were included in its Tennessee apportionment formula receipts factors. BAPCO claims that this is in accordance with T.C.A. §§ 67-4-2012(i) and 67-4-2111(i) . . . . which provide that sales, other than sales of tangible personal property, are in Tennessee only if the greater proportion of the earnings-producing activity is performed in Tennessee. BAPCO contends that the greater proportion of its earnings-producing activity occurs outside Tennessee and thus sources none of its advertising receipts from Tennessee customers to Tennessee for purposes of its apportionment formulas.
>
> When Tennessee advertising receipts are included in the Tennessee receipts factors

of the apportionment formula, the receipts factors and the overall apportionment ratios for each year are increased substantially. For example, for the tax year 2001, inclusion of Tennessee advertising receipts in the apportionment formula Tennessee receipts factors increase the receipts factor ratios from 0.1098% to 10.2352% and the overall apportionment ratio from .105925% to 5.168625%.

Application of the statutory cost-of performance method to source receipts allows BAPCO to derive substantial receipts from Tennessee markets without such receipts being accounted for in the Tennessee receipts factors of its apportionment formulas. For example, in the tax year 2001, BAPCO derived receipts of almost $200 million dollars from Tennessee markets. This represented over 10% of its total receipts for the year 2001. However, BAPCO included only a little over $2 MILLION (0.1098%) of such receipts in its apportionment formula. As a result, the overall apportionment ratio is reduced from about 5% to about 1/10th of 1%. Results for other years are equally dramatic.

Consistent with the above facts, I have determined that application of the statutory apportionment formula does not operate to fairly represent the extent of BAPCO's business activities in Tennessee. When this is the case, T.C.A. §§ 67-4-2014 and 67-4-2112 . . . permit the Department of Revenue, through its delegates, to require the use of any other method to source receipts for purposes of the receipts factors of the apportionment formula numerators. Our auditors did this for the tax years 1997 through 2001 by requiring receipts from the sales of advertising to Tennessee customers to be included in the numerators of BAPCO's apportionment formula receipts factors for each year and I am affirming the requirement of such a variance, not only for the years under audit, but for tax years subsequent to the calendar year 2001 as well.

In order for its apportionment formula to fairly represent the extent of its business operations in Tennessee, beginning with the tax year 1997 BAPCO will be required to include all receipts from the sale of advertising to Tennessee customers in the numerators of its franchise, excise tax apportionment formula receipts factors.

These variance requirements will continue in effect so long as the circumstances justifying the variation remain substantially unchanged or until changed or discontinued by this Department, whichever occurs first.

The variance letter required BAPCO to substitute the cost of performance methodology required by Tenn. Code Ann. § 67-4-2012 (i) for sales of other than tangible property, such as sales of advertising, with the methodology found in Tenn. Code Ann. § 67-4-2012 (h), which is applicable to the sale of tangible property. Thus, the variance required BAPCO to include in the numerator of the sales factor of the apportionment formula its receipts from the sale of advertising as if it were selling tangible property. The imposition of the variance resulted in a tax deficiency of

-13-

$9,866,769 and interest of $3,243,892, a total of $13, 110,661.

Following trial, the Trial Court entered a memorandum opinion and order on July 31, 2008. The Trial Court stated that: "the standard apportionment formula provided by statute is to be presumed to be correct and the variance provision is to be narrowly construed. *AT&T v. Huddleston*, 880 S. W. 2d 682 (Tenn. Ct. App. 1994). The statutory authority for imposing a variance requires that the standard formulas 'not fairly represent the extent of the taxpayer's business activity in this state." *Id.* at 692. "The sole fact that a significant amount of revenue is received from the sale of advertisement in Tennessee that is not apportioned to Tennessee, which is the only factual basis cited by the Commissioner for imposing the variance, does not in and of itself justify the imposition of a variance. The Commissioner has not identified a greater proportion of BAPCO's earnings producing activity performed in Tennessee, as defined by the regulations." The Court held that the proper formulas for determining the receipts factor of the standard apportionment for BAPCO are Tenn. Code Ann. §§ 67-4-2012(i) and 67-4-2111(i) and that BAPCO's use of the cost performance method was appropriate and consistent with the applicable statutes and regulations. The Trial Court voided the action of the Commissioner in imposing a variance.

## Issues Presented for Review on Appeal

A.  When BAPCO provides advertising in the telephone directories it produces that are distributed in Tennessee, does BAPCO's cost of performance of the service of advertising take place solely in Tennessee for purposes of Tenn. Code Ann. §§ 67-4-2012(i)(1) and 67-4-2111(i)(1) even though all activities involved in producing the directories are either performed by BAPCO in other states or are performed by independent contractors on behalf of BAPCO in and out of Tennessee?

B.  Did the Commissioner of Revenue properly issue a variance ?

A trial court's findings of fact in a non-jury trial are reviewed *de novo* upon the record. The trial court is afforded a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13 (d); *Wright v. City of Knoxville,* 898 S. W.2d 177, 181 (Tenn. 1995). The trial court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *Taylor v. Fezell,* 158 S. W.3d 352, 357 (Tenn. 2005)*, Union Carbide Corp. v. Huddleston* 854 S. W.2d 87, 91 (Tenn. 1993).

This case involves the construction and application of the Tennessee Excise and Franchise Law of 1999, and the standard of review in tax cases is well settled: "The construction of statutes and of regulations promulgated pursuant to statutes and the application of those statutes and regulations to undisputed facts are questions of law." *Beare Co. v. Tennessee Dept. of Revenue,* 858 S. W. 2d 906, 907 (Tenn.1993). Ambiguities in statutes imposing taxes must be resolved in favor of the taxpayer. *Pan Am World Services, Inc. v. Jackson,* 754 S. W. 2d 53, 55 (Tenn. 1988) (*quoting*

*Tennessee Farmers' Co-op. v. Jackson,* 736 S. W. 2d 87, 90 (Tenn.1987)).

The parties stipulated that BAPCO had the burden of showing that Tenn. Code Ann. § 67-4-2012(i)(2) (cost of performance for services) applied to its operations and that the Commissioner had the burden of showing that a variance was proper. In *American Tel. & Tel. Co. v. Huddleston,* 880 S. W. 2d 682, 691 -692 (Tenn. App. 1994), the Court discussed the burden of proof in an excise tax variance case:

> The standard statutory apportionment formula is presumed to be correct, and the party seeking to employ an alternate method has the burden of showing that the statutory method is inappropriate. *Donald M. Drake Co. v. Dept. Revenue.,* 500 P.2d 1041,1043-44(Org. 1972); *Donovan Constr. v. Michigan Dept. Treasury,* 337 N. W. 2d 297, 300 (Mich. 1983). The variance provision applies only in unusual and limited circumstances and is to be interpreted narrowly in order to carry out the purpose of uniform apportionment under the act. *Donald M. Drake Co.,* 500 P.2d at 1044. The burden is on the party seeking a variance to establish that the formula does not fairly represent [the taxpayers] business activities in the taxing state. *Donald M. Drake Co.,* 500 P.2d at 1041; *Deseret Pharm. Co. v. State Tax Comm'n.,* 579 P.2d 1322, 1326-27 (Utah 1978).

*Id.* at 691-692.

The Commissioner's first argument on appeal is that the Tennessee excise and franchise tax assessed to BAPCO should have been properly calculated pursuant to Tenn. Code Ann. §§ 67-4-2012(i)(1) and 67-4-2111(i)(1) instead of Tenn. Code Ann. §§ 67-4-2012(i)(2) and 67-4-2111(i)(2). BAPCO, in its returns, calculated the excise tax under §2012(i)(2) and not §2012(i)(1) because it contended that a greater proportion or all of its earning producing activity was performed in another state. Tenn. Code Ann. §§ 67-4-2012(h) and (i) provide:

> h) Sales of tangible personal property are in this state, if:
>
> (1) The property is delivered or shipped to a purchaser, other than the United States government, inside this state regardless of the F.O.B. point or other conditions of the sale; or
> (2) The property is shipped from an office, store, warehouse, factory or other place of storage in this state and the purchaser is the United States government.
>
> (i) Sales, other than sales of tangible personal property, are in this state, if the earnings-producing activity is performed:
> (1) In this state; or
> (2) Both in and outside this state and a greater proportion of the earnings-producing activity is performed in this state than in any other state, based on costs of

-15-

performance.

The parties stipulated that, absent the issuance of a variance, Tenn. Code Ann. §§ 67-4-2012(i) and 67-4-2111(i) are applicable for determining the numerator of the sales factor for the numerator or the apportionment formula. They did not stipulate, however, whether part (i)(1) or (i)(2) was appropriate to determine BAPCO's assessment. When the Commissioner issued the variance and Notice of Assessment of additional tax due, the utilization of part (i)(2) by BAPCO was not questioned and the auditor stated in the audit and at trial that there was no dispute about the wording of the Tennessee statutes or BAPCO's business activities. Shortly before trial, the Commissioner raised the argument that BAPCO had wrongly calculated its excise and franchise tax under §§ 67-4-2012(i)(2) and 67-4-2111(i)(2) and that, because all of BAPCO's earning producing activity took place in Tennessee, part (i)(1) was applicable and all of its revenues from the sale of advertising should have properly been placed in the numerator of the apportionment formula. The application of part (i)(1) reaches the same result as the Commissioner reached when she applied the variance, i.e. all of the receipts from the sale of advertising is included in the sales factor of the numerator. In the pre-trial brief, the Commissioner rejected for the first time BAPCO's position that because its costs of performance for the Tennessee directories were incurred overwhelmingly in Georgia and Alabama and little or no costs of performance were incurred in Tennessee, the sales of the advertising services should not be included in the numerator of the apportionment formula under § 67-4-2012(i)(2). Instead, the Commissioner argued that BAPCO's earning-producing activity that generates its Tennessee advertising revenues is the performance of its advertising service in Tennessee through its providing and distributing the yellow pages directories in Tennessee. Further, the Commissioner argued that BAPCO uses the Tennessee directories to fulfill its contract obligations to its advertising customers who pay to have their advertisements published in the directories and if it were not for the publication and distribution of the directories in Tennessee, BAPCO would not earn these advertising revenues.

On appeal, the Commissioner takes the position that the Trial Court erred when it found that the Commissioner had failed to support its argument that all costs of performance of the sale of advertising took place in Tennessee. The Commissioner's brief argues as follows:

> BAPCO's earning producing activity with respect to its advertising sales for the Tennessee directories is performed entirely in Tennessee because it is paid to advertise only in Tennessee. Thus, the receipts from that activity are subject to tax in Tennessee. This is the core principle of franchise and excise taxation - that companies should be taxed based on the benefits they derive from the privilege of doing business in this state. In this instance, this is accomplished through Tenn. Code Ann. §§ 67-4-2012(i)(1)(excise tax) and 67-4-2111(i)(1)(franchise tax), which provide that receipts from BAPCO's advertising in Tennessee must go into the numerator of its Tennessee apportionment formula. While BAPCO may perform preliminary work in other states, its revenues are entirely due to its performance of advertising services in Tennessee. That is what its advertisers in the Tennessee white and yellow pages pay for, and that advertising service is accomplished purely through its distribution of telephone

-16-

directories in Tennessee. BAPCO's advertisers . . . are paying purely for the distribution of advertising in Tennessee. This is the very service for which its customers pay.

The Commissioner's example of how BAPCO conducts "earning-producing activity" in Tennessee, focuses on the fact that the directories end up in Tennessee.

Tenn. Code Ann. § 67-4-2012(i) instructs that the sale of things other than tangible personal property, like the sale of advertising, is in Tennessee based on whether (1) earning-producing activity is performed in this state or (2) earning-producing activity is both in this state and in other states and a greater proportion of the earning-producing activity occurs in Tennessee, based on the cost of performance. If either scenario (1) or (2) are answered affirmatively, the sales factor is included in the numerator of the apportionment formula. However, if earning-producing activity takes place predominately in another state, the sales are not in Tennessee and not included in the apportionment formula.

The Commissioner did not offer any testimony that Tenn. Code Ann. § 67-4-2012(i)(1) should apply rather than part (i)(2). The Department's employee who performed the audit, Chris Atherton, offered testimony as follows:

> Q.   Okay. And, in fact, you didn't find that they [BAPCO] had any direct costs in Tennessee, did you?
>
> A.   I did not see where they had any costs. They did not produce the directories in Tennessee, nor did they have a staff in Tennessee that solicited the advertisements or produced layouts or for any costs such as that would have been attributable to the production of directories that ultimately ended up in Tennessee.

Atherton further testified that he certified to the Commissioner that BAPCO had no direct costs in Tennessee as part of the audit and that he included in the audit the following language: "The wording of the Tennessee Statutes and the facts and circumstances involved with BAPCO's business activities and not in dispute." He also affirmed that the tax assessment issued to BAPCO was based on the variance letter by the Commissioner, thus the assessment was not based on the application of Tenn. Code Ann. § 67-4-2012(i)(1) as the Commissioner now argues.

BAPCO's earnings producing activity is not just the distribution of the Yellow Pages, as its earning producing activity is a series of integrated, interdependent steps to the satisfaction of the advertisers from whom BAPCO derives its income. Without these numerous steps BAPCO would have no advertising to include in a directory, regardless of the mode of delivery.

The Commissioner has appealed the Chancellor's finding that the variance imposed by the Commissioner was improper. The Commissioner argues that even if the governing statutes

were read to authorized a cost of performance methodology, the receipts from the advertising contained in the directories distributed in Tennessee should be sourced to Tennessee by the imposition of a variance. The Commissioner contends that the answer to the key question of whether the computation of excise tax based on a cost of performance formula, as applied by both BAPCO and the Department, reasonably reflects BAPCO's business activity in Tennessee is "obviously no". In support of this position, the Commissioner points to the fact that on BAPCO's returns for the five years at issue, using the cost of performance formula to allocate its earnings, BAPCO reported and paid only $296,140 in Tennessee excise and franchise tax but derived advertising income from the distribution of 23,715,829 directories in Tennessee of $897,488,193 over the same five year period. The Commissioner pointedly concludes that "[i]t is patently absurd to contend that a tax payment of $296,140 is commensurate with the business BAPCO conducted in Tennessee over the five years involved in this case." Accordingly, the Commissioner argues that under the facts presented by BAPCO's business activities, the cost of performance formula has malfunctioned and the situation is precisely one for which the Commissioner was vested with variance powers by the legislature.

Tennessee courts have repeatedly recognized that the Commissioner of Revenue may properly exercise her discretion in varying the statutory apportionment formula when application of the formula does not fairly represent the taxpayer's business in the state. See *Sherwin-Williams Co. v. Johnson*, 989 S. W.2d 710, 716 (Tenn. Ct. App. 1998); *American Tel. & Tel. Co. v. Huddleston* 880 S. W.2d 682, 691-692 (Tenn. App. 1994); *Federated Stores Realty, Inc. v. Huddleston* 852 S. W.2d 206, 213-214 (Tenn.1992)(statutorily overruled on other grounds); *Peterson Mfg. Co. v. State,* 779 S. W.2d 784, 786-787 (Tenn.1989); *S. Coach Lines, Inc. v. McCanless,* 191 Tenn. 634, 638, 235 S. W.2d 804 (1951); *Am. Bemberg Corp. v. Carson,* 188 Tenn. 263, 268-271, 219 S. W.2d 169 (1949). There are no Tennessee cases, however, that consider the issuance of a variance from the cost of performance formula in connection with the sale of advertising.

In support of its argument that the variance issued by the Commissioner was entirely appropriate, the Commissioner cites to the authors of the UDITPA and their specific concerns regarding the application of the cost of performance formula in the arena of income from advertising in publications. While the Commissioner acknowledges that the UDITPA as originally developed by the Multistate Tax Commission and as adopted in Tennessee, uses formulas designed to apply to all businesses, it points out that the authors of the uniform act recognized that those formulas did not function very well for certain types of businesses, and provided for variances in Section 18 of the uniform act, which is codified as Tenn. Code Ann. §§ 67-4-2014(a) and 67-4-2112(a). Specifically, the authors of the uniform act recognized that Section 17, which is the counterpart of Tenn. Code Ann. § 67-4-2012(i)(2) and at issue here, did not always adequately deal with all of the types of receipts of sales from other than tangible property. The Commissioner cites to Professor William J. Pierce, the "father" of UDITPA, who noted the deficiency in this area and the need for a variance under Section 18 to deal with certain situations not covered by Section 17 (Tenn. Code Ann. § 67-4-2012(i)(2)) as follows:

Another problem arises in conjunction with sales other than sales of tangible personal property. Section 17 of the uniform act attributes these sales to the state in which the

income-producing activity is performed. If the activity is performed in more than one state, the sales are attributed to the state in which the greater proportion of the activity was performed, based upon costs of performance. In many types of service functions, this approach appears adequate. However, there are many unusual fact situations connected with this type of income and probably the general provisions of Section 18 should be utilized for these cases. If we assume that the activity involved is the servicing of industrial equipment, the formula provided in the uniform act could be easily applied and the result appears equitable. **In contrast, assume that the sales item involved is advertising revenue received by a national magazine publisher. The state of activity would be difficult, if not impossible, to ascertain, so it would appear that this type of income may well be apportioned on the same basis as subscription income.** The national conference considered this problem at length and concluded that for certain types of sales income, exceptions would have to be established by the tax collection agencies, since no formula seemed to be satisfactory for every conceivable factual situation. Generally, it was felt that the provisions of Section 17 were the best that could be designed to cover the greater proportion of cases.

William J. Pierce, *The Uniform Division of Income for State Tax Purposes*, 35 Taxes 474, 780-781 (1957)(emphasis added).

The Commissioner insists that Professor Pierce's analysis is on point and that the sales from advertising in the directories distributed in Tennessee should be apportioned according to a circulation or distribution method , as the Commissioner did when the variance was imposed.

Based on the stated intent of the framers of the UDITPA that a variance from the cost of performance formula may be appropriate under certain circumstances, including the specific mention of sale of advertising in a publication, and based on the fact that BAPCO has paid only $296,140 in Tennessee excise and franchise tax but derived advertising income from the distribution of 23,715,829 directories in Tennessee of $897,488,193 during the five years at issue, the application of the cost of performance formula does not fairly represent BAPCO's business in the state and that the issuance of the variance was appropriate. BAPCO raises several objections to the propriety of the application of the variance. BAPCO argues that the variance is improper because the Tennessee cost of performance statute is an "all or nothing" statute which for BAPCO produced a sales factor of almost zero and that there is nothing unique and nonrecurring about the facts of BAPCO's business activity in Tennessee, or about the costs of performance calculation.

BAPCO disagrees with the Commissioner's representation that the cost of performance formula "malfunctioned" in this case. BAPCO's position is that Tenn. Code Ann. § 67-4-2012(i) is an "all or nothing" statute and that, as such, it is a "double-edged sword". BAPCO asserts that to the extent that a service business has the largest proportion of its direct costs in Tennessee, all of such taxpayer's receipts are sourced to Tennessee in the calculation of the sales factor portion of the formula even if some of the costs of performance occurred elsewhere. Likewise,

if the greater proportion of the direct costs are elsewhere, then the sales factor is zero. Further, the statutory formula, which the parties stipulated to as applicable, contemplates that the sales factor could very well be zero or near zero, as it appears to be in BAPCO's case. BAPCO argues that for the Commissioner to then issue a variance when a particular business's sales factor is zero because the greater proportion of its direct costs occur outside Tennessee renders section 67-4-2012(i) meaningless. While BAPCO argues that UDITPA makes a specific provision to deal with BAPCO's exact situation, Tennessee did not adopt the regulation. Our analysis of UDITPA, when compared to the Tennessee statutes, demonstrates that Tennessee has essentially adopted all provisions of the UDITPA.

While BAPCO's "all or nothing" argument is appealing, in that the Commissioner can virtually ignore the statutorily required cost of performance formula when the results are unfavorable to the Department, the fact remains that Tenn. Code Ann. §§ 67-4-2014(a) and 67-4-2112(a) were enacted by the legislature to provide the Commissioner with the authority to permit or require a departure from the standard apportionment formula when application of the formula does not fairly represent the extent of the taxpayer's business activity in Tennessee and the Commissioner is given the authority to use any method to source receipts for purposes of the receipts factor or factors of the apportionment formula numerator or numerators. Moreover, the authors of the UDITPA, and the Tennessee General Assembly were aware that under certain factual scenarios, specifically when the sale of advertising is at issue, the statutory formulas just do not work and the tax collector would necessarily have to impose a variance. Thus, BAPCO's "all or nothing" argument is not persuasive.

BAPCO also makes the argument that the Commissioner did not demonstrate that there was something unique and nonrecurring about the facts of BAPCO's business activity in Tennessee or about the costs of performance calculation to justify the imposition of a variance. BAPCO's reliance on the Tennessee Rules and Regulations, Rule 1320-6-1-.35, (Rule 35) is misplaced.

Rule 4 provides:

The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's capital and net earnings for purposes of computing franchise and excise taxes, §§67-4-911 and 67-4-812 permit a departure from the allocation and apportionment provisions only in limited and specific cases. §§67-4-911 and 67-4-812 may be invoked only in specific cases where unusual fact situations (which ordinarily will be unique and nonrecurring) produce incongruous results under the appointment and allocation provision contained in the Franchise and Excise Tax Laws.

The unusual fact situation in this case is that all of the costs of production occurred outside of Tennessee, but the revenue derived from the end product only occurred when the product was distributed in Tennessee which only then obligated the purchasers to pay the revenue proceeds to the producer for the sale of the advertising. Certainly, the circumstances of this case have a unique

quality, and while the process can be recurring, the "ordinarily" qualifier under the rule does not proscribe the issuance of a variance in all such cases.

In *American Tel. & Tel. Co. V. Huddleston,* 880 S.W.2d 682, 691-692 (Tenn. App. 1994), the Court said at page 691: "The Commissioner may therefore exercise reasonable discretion in determining whether facts or circumstances justify departure from the statutory formula." We hold that the Commissioner carried the burden of proof that the facts and circumstances of this case enabled her to exercise her reasonable discretion in declaring a variance for the purpose of revising this formula to establish the basis for the revenue assessed. We reverse the ruling of the Chancellor on this issue.

The cause is remanded to enter Judgment pursuant to the Commissioner's counterclaim for the full amount of the assessment, plus statutory interest and reasonable attorney's fees and expense of litigation as required by Tenn. Code Ann. § 67-1-1803(d).

The cost of the appeal is assessed to Bellsouth Advertising & Publishing Corporation.

_____
HERSCHEL PICKENS FRANKS, P.J.